# O. T. DAVIS

## V.

# MARY B. DAVIS, ET AL.

Record No. 840567

June 12, 1987

Present: Carrico, C.J., Poff, Compton, Stephenson and Russell, JJ., and Cochran and Gordon, Retired Justices

*Herbert C. Gill, Jr. (Rudy, Gill, Keown & Dicks*, on brief), for appellant.

*Charles W. Beddow (Beddow, Marley, Burgess and Murphy*, on brief), for appellee, Mary B. Davis.

No briefs or arguments for appellees, United Virginia Bank and Bank of Virginia Company.

COMPTON, J., delivered the opinion of the Court.

In this civil appeal, we consider whether the trial court erred in dismissing the claims of a party who exercised his constitutional privilege against self-incrimination and refused to answer certain questions propounded by counsel for other parties to the litigation.

In September 1979, a decree of divorce was entered dissolving the marriage of appellant O. T. Davis and appellee Mary B. Davis. In January 1980, the parties sold their commonly owned real

estate. A portion of the proceeds of sale was paid to appellee Bank of Virginia to purchase a cashier's check in the amount of $10,000 payable to "O.T. and M.B. Davis." O. T. Davis obtained possession of the check, which was negotiated and accepted by appellee United Virginia Bank in May 1980. At that time, United Virginia Bank paid him $10,000 and negotiated and delivered the check to the Bank of Virginia.

In June 1981, Mary B. Davis, unaware of the negotiation of the check, filed a suit in equity in the court below against O. T. Davis. Alleging that he had wrongfully refused to endorse the check so that the proceeds could be equally divided between the parties, she prayed for partition of the check.

In November 1981, O. T. Davis appeared before the trial court pursuant to an order directing him to produce the check. Responding to questions from the plaintiff's attorney, Davis stated that the check had been in his possession "one-and-a-half years ago," but that he did not "have it" at the time of the hearing. When asked what disposition he had made of the check, he "pled the Fifth Amendment," stating that any answer he "would give might tend to incriminate him." The trial court "sustained his motion under the Fifth Amendment" and continued the hearing to a later date.

In December 1981, O. T. Davis filed by leave of court an answer and cross-bill. In the cross-bill, Davis sought a judgment against Mary B. Davis for $5,542.44. He alleged that during 1979 she had used his credit card, without authorization, causing charges to be incurred which he had paid in the sum of $1,361.44. He further alleged that he had made personal loans to her totalling $410, that he had made house and automobile payments on her behalf totalling $2,106, and that he had made utility payments for her in the sum of $1,755, none of which had been repaid.

Subsequently, Mary B. Davis learned the cashier's check had been negotiated, no proceeds having been paid to her. In April 1982, she filed an action at law in the court below against the two banks, seeking judgment against either or both in the sum of $5,000. She asserted that the check was accepted by United Virginia Bank based on the alleged signatures of O. T. Davis and Mary B. Davis and later was negotiated by that bank to the Bank of Virginia. She alleged that the signature of "M. B. Davis," purportedly hers, was unauthorized and was, in fact, a forgery. Ac-

cordingly, she alleged, the banks were indebted to her for one-half of the face amount of the check.

Subsequently, the Bank of Virginia filed a cross-claim in the amount of $5,000 against United Virginia Bank asserting that, if the plaintiff prevailed in her claim, then United Virginia Bank had violated its warranties to Bank of Virginia that it had good title to the check and that all signatures were genuine or authorized on the check.

Later, United Virginia Bank filed a third-party motion for judgment against O. T. Davis seeking recovery of "all sums that may be adjudged against United Virginia Bank in favor of M. B. Davis." The bank alleged that, if it were liable to Mary B. Davis, such liability was due to the knowing and wrongful presentation of the check to the bank for negotiation by O. T. Davis, who knew that the check did not include all signatures necessary for negotiation. The bank alleged, alternatively, that Davis forged the signature of the joint payee.

Next, O. T. Davis filed a counterclaim in the law action against Mary B. Davis which was identical to the cross-claim filed against her in the chancery suit.

In August 1983, there was a bench trial of the law action. After the plaintiff had presented her case-in-chief, the attorney for United Virginia Bank called O. T. Davis as a witness. In response to questions, Davis gave his name, home address, and place of employment. Then Davis asserted his privilege against self-incrimination in response to the questions: whether Mary B. Davis received possession of the cashier's check, whether he had possession of the check at any time prior to its negotiation, whether he presented the check to United Virginia Bank to be cashed, whether the check had both signatures on it when presented to be cashed, whether he put the proceeds of the check into an account in his name and that of his second wife, and whether he forged the signature of the joint payee. Davis testified no further at the trial.

After the evidence was completed, the trial court entered a joint and several judgment in favor of Mary B. Davis against both banks for $5,000. The court further entered judgment on Bank of Virginia's cross-claim against United Virginia Bank for any of the amount awarded to the plaintiff which Bank of Virginia would be required to pay. Additionally, the court awarded judgment for $5,000 in favor of United Virginia Bank on its third-party claim against O. T. Davis.

Upon conclusion of the hearing of the law action, the court granted the motion of O. T. Davis to consolidate the chancery suit with the law action in order to adjudicate his cross-claim and counterclaim. No further testimony was presented and Mary B. Davis, by counsel, moved to "strike all pleadings" of O. T. Davis "on the ground [he] refused to testify herein by duly invoking his constitutional privilege against self incrimination." The trial court granted the motion to strike, ordered stricken all pleadings filed by Davis in both actions, and granted judgment in favor of Mary B. Davis on the third-party counterclaim filed by O. T. Davis in the law action. We awarded O. T. Davis an appeal from the January 1984 final orders entered in the two cases embodying the foregoing rulings. The banks have made no appearance on appeal.

Mary B. Davis contends the trial court correctly struck the cross-claim and counterclaim, identical pleadings, effectively dismissing the demands made by O. T. Davis in those pleadings. She relies principally on Code § 8.01-401(B), which provides,

> "If any party, required by another to testify on his behalf, refuses to testify, the court, officer, or person before whom the proceeding is pending, may, in addition to punishing said party as for contempt, dismiss the action, or other proceeding of the party so refusing, as to the whole or any part thereof, or may strike out and disregard the plea, answer, or other defense of such party, or any part thereof, as justice may require."

She argues that the statute "codifies for Virginia the principle of law that sanctions may be imposed in civil cases where [a] party seeking affirmative relief or gain invokes the privilege [against self-incrimination] when called as a witness by another party." Here, she points out, Davis was called as a witness by other parties: by Mary B. Davis during the hearing of the motion to produce in the chancery suit and by the bank during trial of the law action. In both instances, she argues, Davis refused to testify and, thus, the statute authorized the trial court to dismiss the respective claims.

Additionally, she relies on the common-law rule which is consistent with the foregoing statutory provision. Called the "sword and shield" doctrine, this rule recognizes that historically the privilege against self-incrimination was intended solely as a

shield. The rule thus provides that a moving party cannot use it as a sword to sabotage any attempt by the other party, either during pretrial discovery or at trial, to obtain information relevant to the cause of action alleged, and relevant to possible defenses to the claim. *Laverne* v. *Incorp. Village of Laurel Hollow*, 18 N.Y.2d 635, 638, 272 N.Y.S.2d 780, 782, 219 N.E.2d 294, 295 (1966), *appeal dismissed*, 386 U.S. 682 (1967). In other words, the moving party "in a civil action who exercises his privilege against self-incrimination to refuse to answer questions pertinent to the issues involved will have his complaint dismissed upon timely motion." *Kisting* v. *Westchester Fire Ins. Co.*, 290 F.Supp. 141, 149 (W.D. Wisc. 1968), *aff'd*, 416 F.2d 967 (7th Cir. 1969). *See* annot., 4 A.L.R.3d 545. The idea is that it would be unjust to permit parties to use the courts to seek affirmative relief while at the same time deflecting relevant questions, the answers to which may constitute a defense to the claims asserted.

We are of the view that the statute does not apply to these facts, even assuming that when Davis took the witness stand and answered several questions, he thereby "refuse[d] to testify" within the meaning of the statute. We also are of the view that the general law does not support the trial court's ruling.

█ Explicit in the statement of the general rule, and implicit in the statute, is the requirement that the party who is seeking affirmative relief and who has exercised the privilege must have refused to answer questions *pertinent to the issues involved*. Stated differently, such party asserting the privilege must have frustrated an attempt by the other party to obtain information *relevant to the cause of action alleged and to possible defenses to the claim*. Construing the statute consistently with the common law, we conclude that the statutory "refus[al] to testify" must be a refusal to testify about pertinent or relevant information. *See Wicks* v. *City of Charlottesville*, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974), *appeal dismissed*, 421 U.S. 901 (1975) ("The statute must . . . be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law.").

Reference to two cases will illustrate the operation of this aspect of the rule. In *Stockham* v. *Stockham*, 168 So.2d 320 (Fla. 1964), a wife instituted suit for divorce on the ground of cruelty. The husband asserted the wife's adultery as an affirmative de-

fense. The wife, exercising her privilege against self-incrimination, refused to answer the husband's requests for admissions concerning his defense of adultery. The trial court upheld the wife in her refusal to answer, but was reversed on appeal. The Supreme Court of Florida held that equity considerations required the wife to answer the requests for admissions, notwithstanding claim of privilege, and that, failing to answer, the wife should not be permitted to further prosecute her action. The court refused to expand the protection of the privilege to benefit the plaintiff, who with one hand sought affirmative relief in court and with the other refused to answer otherwise pertinent and proper questions which might have had a bearing on her right to maintain the action. *Id.* at 321.

In contrast, in *Bauer* v. *Stern Finance Co.,* 169 N.W.2d 850 (Iowa 1969), *cert. denied,* 396 U.S. 1008 (1970), Bauer alleged, in a first count, that defendant finance company, which had financed purchase of plaintiff's cattle, wrongfully took possession of his cattle and, in a second count, that defendant wrongfully sold the cattle and misapplied the sale proceeds. The finance company claimed that a number of head of cattle, security for a loan, were missing from Bauer's farm, causing Stern to declare the entire amount of the loan due. Stern took plaintiff's deposition and plaintiff refused to answer questions and produce records dealing with the location of the missing cattle and how they had been been disposed of by him, asserting the privilege against self-incrimination. The plaintiff appealed from a summary judgment dismissing his action for his failure to produce the requested information.

The Supreme Court of Iowa sustained the trial court's ruling on the first count and reversed the ruling on the second count, noting that the two counts presented entirely different theories. The court held that the plaintiff's refusal to answer "should be considered . . . only as to those matters upon which it directly bears." *Id.* at 855. The court noted that the first count relied entirely on the assertion the defendant wrongfully seized plaintiff's cattle. Defendant denied any seizure and asserted the cattle were sold voluntarily by plaintiff to one Camenzind, another defendant. The court reasoned that, assuming Stern seized or repossessed the cattle, plaintiff must show this to have been a wrongful or tortious act. And the facts necessary to prove that the act was wrongful were the very facts the plaintiff refused to disclose.

On the other hand, the second count asked damages for the alleged wrongful conduct of the defendant after the alleged seizure

and in accounting for the purchase price of cattle sold. The plaintiff alleged that Stern sold the cattle to Camenzind but failed to obtain the highest price for the animals and that the plaintiff did not receive credit for various rebates, refunds, and unearned interest he was due. The court stated that the plaintiff's failure to respond to the questions dealing with the allegedly missing cattle did not "in any way" affect the issues raised in the second count about the sale of the cattle actually repossessed. *Id.*

In the present case, the plaintiff's claims in both the chancery suit and law action dealt with recovery of one-half of the proceeds of the cashier's check. The assertion by O. T. Davis of his constitutional right against self-incrimination bore on the issues relevant to those claims. The claims of O. T. Davis set forth in the cross-bill and counterclaim, however, dealt with entirely different demands. Those demands were for debts allegedly due him by his former wife based on credit card charges and other advances made on her behalf. His refusal to answer questions about the negotiation of the check was not pertinent to the issues involved in the claims which he sought to prosecute, nor did such conduct frustrate any attempt by Mary B. Davis to obtain information relevant to his claims against her or possible defenses to those claims.

Consequently, we hold the trial court erred in striking the cross-bill and counterclaim. The judgments appealed from will be reversed only insofar as they dismiss the cross-bill and counterclaim filed by O. T. Davis. The cases will be remanded for further proceedings on those pleadings. In all other respects, the judgments appealed from will be affirmed.

*Reversed in part,*
*affirmed in part,*
*and remanded.*