PRESENT: Carrico, C.J., Keenan and Kinser, JJ., Poff, Stephenson, and Whiting, Senior Justices, and Cochran, Retired Justice

CARMEN PEREZ, SUING INDIVIDUALLY AND ON
 BEHALF OF ALL OTHERS SIMILARLY SITUATED

                                            OPINION BY
v.  Record No. 990677    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                          November 5, 1999
CAPITAL ONE BANK


              UPON A QUESTION OF LAW CERTIFIED BY THE
        UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
                           OF ILLINOIS

     The United States District Court for the Northern District of Illinois entered an order of certification requesting that we exercise our certification jurisdiction, Va. Const. art. VI, § 1; Rule 5:42, and answer the following question:

> Does § 6.1-330.63 of the Virginia Code preclude a challenge, under the common law doctrine of unlawful liquidated damages, to late fees included in contracts between credit-card issuers and card holders, where those contracts are governed by Virginia law?

By order entered April 21, 1999, we accepted the question for consideration.

                                  I

     On December 4, 1997, Carmen Perez filed in the United States District Court for the Northern District of Illinois her class action complaint against Capital One Bank (Capital One). In Count V of her complaint, Perez alleged that the late fees charged to her credit card account by Capital One constituted

unlawful liquidated damages (i.e., penalties) under the common law of Virginia.

Capital One filed a motion for summary judgment as to Count V. The District Court reserved its ruling on the motion, pending this Court's answer to the certified question.

II

The relevant facts as found by the certifying court are as follows: Perez is an Illinois resident and the only named plaintiff alleged to represent the putative class in the sole remaining count, Count V of the third amended complaint. Capital One is a Virginia limited-purpose credit card bank with its principal place of business in Glen Allen, Virginia. Capital One currently has in excess of sixteen million credit card account holders nationwide, and Perez has a credit card account with Capital One.

Perez's account is governed by the terms of Capital One's Customer Agreement. Paragraph 23 of the Customer Agreement provides that the agreement is governed by Virginia and federal law. Virginia Code § 6.1-330.63(A) provides, in part, that:

> Notwithstanding any other provision of this chapter, any bank or savings institution may impose finance charges and other charges and fees at such rates and in such amounts and manner as may be agreed by the borrower under a contract for revolving credit or any plan which permits an obligor to avail himself of the credit so established.

2

Capital One's Customer Agreement provides that a late charge will be imposed when a customer fails to make a timely payment. The Customer Agreement at issue provides, in pertinent part:

> Late Payment Charge. A late payment charge of $18.00 (<u>Effective 01/01/97, the late charge will be $20</u>) will be imposed if we do not receive your Minimum Payment in time for it to be credited within 3 days after the due date shown on your Periodic Statement. (<u>Effective 01/01/97, a late payment charge will be assessed if your payment is not received on the due date. There will be no grace period.</u>)

At the time the question was certified, Capital One imposed late fees that ranged from $20.00 to $29.00. Perez's February 1, 1997 statement from Capital One reflects an $18.00 late payment charge imposed on January 2, 1997, because of an untimely December 1996 payment. Her Minimum Payment Due at the time was $10.00, and her account balance was $305.53. There is no dispute that Perez did not pay the Minimum Payment Due within the time provided in the Customer Agreement.

On August 1, 1997, the late fee charged by Capital One to Perez's account increased to $20.00. From February 1, 1997, through July 2, 1998, Perez incurred $396.00 in various fees, $178.00 of which represented late fees. From June 1, 1996, through July 2, 1998, Perez made payments to her account totaling $415.00.

III

3

Under the common law, contracting parties may agree in advance that, in the event the contract is breached, the breaching party shall pay liquidated damages.  A liquidated damages provision is enforceable when the actual damages contemplated at the time of the contract are not certain and are difficult to measure with accuracy and when the fixed amount of damages is not out of all proportion to the probable loss.  On the other hand, when the damages caused by the breach are prone to definite measurement or when the stipulated amount would grossly exceed actual damages, courts of law usually construe such a provision as an unenforceable penalty.  301 Dahlgren Ltd. Partnership v. Board of Sup., 240 Va. 200, 202-03, 396 S.E.2d 651, 653 (1990); Taylor v. Sanders, 233 Va. 73, 75, 353 S.E.2d 745, 746-47 (1987).

Perez, on her own behalf and on behalf of a putative nationwide class of Capital One's cardholders, challenges the amount of the late fees being imposed by Capital One as unlawful liquidated damages under the common law of Virginia.  She contends that Code § 6.1-330.63(A) does not preclude her from bringing an unlawful liquidated damages claim against Capital One because the Code section does not abrogate the common law of contracts.  Perez asserts that, in the absence of language that plainly manifests an intent to abrogate the common law, the common law remains intact.

4

Capital One argues that the common law was explicitly abrogated in 1987 when the General Assembly enacted Code § 6.1-330.80, which provides, in pertinent part, as follows:

> Any lender . . . may impose a late charge for failure to make timely payment of any installment due on a debt, . . . provided that such late charge does not exceed five percent of the amount of such installment payment and that the charge is specified in the contract between the lender . . . and the debtor.

1987 Va. Acts ch. 622. Capital One further argues that the General Assembly, in also enacting Code § 6.1-330.63, merely removed the 5% limit and permitted the contracting parties to agree to fees in excess thereof with respect to a contract for revolving credit.

Both Perez and Capital One assert that the language of Code § 6.1-330.63 is clear and unambiguous, and we agree. Therefore, we must accept its plain meaning and not consider rules of statutory construction, legislative history, or extrinsic evidence. Yates v. Pitman Manufacturing, Inc., 257 Va. 601, 605, 514 S.E.2d 605, 607 (1999); Town of Blackstone v. Southside Elec. Coop., 256 Va. 527, 533, 506 S.E.2d 773, 776 (1998).

In 1987, the General Assembly enacted Chapter 7.3, entitled "Money and Interest," which is part of Title 6.1 of the Code, entitled "Banking and Finance." As previously noted, Code § 6.1-330.80, a part of Chapter 7.3, permitted a lender and a debtor to agree to a late charge that did not exceed 5% of the

5

amount of a past due installment.  Thus, a lender could charge up to 5% without being required to show that the actual damages were uncertain and difficult to determine and that the amount charged was not out of proportion to the probable loss.

Manifestly, in enacting Code § 6.1-330.80, the General Assembly intended to abrogate the common law rule prohibiting a penalty.  In also enacting Code § 6.1-330.63, the General Assembly removed the 5% cap on charges imposed by banks and savings institutions under contracts for credit, allowing such charges "at such rates and in such amounts . . . as may be agreed by the borrower."  It logically follows, therefore, that Code § 6.1-330.63, which contains more specific language applicable to banks and revolving credit plans, perpetuates the abrogation of the common law rule.

Accordingly, we answer the certified question in the affirmative.

Certified question answered in the affirmative.

6