COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


SHIRLEY TRAVIS

                                         OPINION BY
v.    Record No. 1938-00-2           JUDGE ROBERT P. FRANK
                                          JULY 17, 2001
JOSEPH E. FINLEY, JR.


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                      Timothy J. Hauler, Judge

            Robert D. Jacobs for appellant.

            S. Keith Barker (S. Keith Barker, P.C., on
            brief), for appellee.


     Shirley Travis (mother) appeals the decision of the trial

court dismissing her petition to modify custody and her petition

for show cause against Joseph E. Finley, Jr. (father).  On

appeal, she contends the trial court erred in dismissing her

petitions for her failure to answer the discovery propounded by

father because:  1) she asserted her Fifth Amendment privilege

against self-incrimination and 2) the discovery sought by father

was not relevant to the proceeding.  We agree that the trial

court erred in dismissing mother's petitions.

                         I.   BACKGROUND

     On August 4, 1999, mother filed a petition to amend a

previous custody order of July 6, 1999, in which father was

awarded custody. In support of her petition to amend, mother alleged a change in circumstance.

The July 6, 1999 order[1] came on a remand from this Court after we reversed an earlier order that allowed mother to retain custody and remove the child to Ghana. On remand, the trial court gave custody to father and set forth specific visitation.

A number of other matters came before the trial court in addition to the petition to amend custody, including: 1) father's motion to compel discovery of mother's income and whereabouts while she was under order not to leave the country; 2) father's motion to enforce various subpoenas duces tecum; 3) father's motion to establish visitation for mother; 4) father's motion to have the civil contempt fine reduced to judgment; 5) father's motion for attorney's fees and costs; 6) mother's petition to show cause against father for failure to pay child support, failure to allow visitation and other actions alleged to have violated previous orders.

By order of June 30, 2000, the trial court ruled it would dismiss mother's petition to amend custody and her petition to show cause against father if mother did not answer the discovery requests within ten days. Mother failed to do so, and on July 14, 2000, the trial court dismissed mother's petition to amend

---

[1] The trial court obtained jurisdiction to hear these matters from an appeal from the juvenile and domestic relations district court.

custody because "the [mother] failed to answer the discovery in accordance with the court's order of June 30, 2000 . . . ."  In the same order, the trial court dismissed the petition to show cause against father for his alleged failure to pay child support.  Mother then timely appealed the July 14, 2000 order by her notice of appeal filed on August 9, 2000.

On September 1, 2000, the trial court resolved the remaining issues:  contempt, visitation, child support, health insurance, attorney's fees and sanctions against mother.  The September 1, 2000 order recited that mother's petition to amend custody had been dismissed in the July 14, 2000 order.

Father filed a motion to dismiss mother's appeal for lack of jurisdiction.  Father contends the July 14, 2000 order is "an interim order" and that the September 1, 2000 order is the "final order."

## II.  ANALYSIS

We first must determine whether the July 14, 2000 order is a "final order" or an interlocutory order that "adjudicates the principles of a cause."

Pursuant to Code § 17.1-405, the Court of Appeals has jurisdiction to hear appeals from:

> 3.  Any final judgment, order, or decree of a circuit court involving:
> a.  Affirmance or annulment of a marriage;
> b.  Divorce;
> c.  Custody;
> d.  Spousal or child support;

> e. The control or disposition of a child;
>
> f. Any other domestic relations matter arising under Title 16.1 or Title 20; or . . . .
>
> 4. Any interlocutory decree or order entered in any of the cases listed in this section . . . (ii) adjudicating the principles of a cause.

Code § 17.1-405(3)-(4).

> For an interlocutory decree to adjudicate the principles of a cause, the decision must be such that "'the rules or methods by which the rights of the parties are to be finally worked out have been so far determined that it is only necessary to apply those rules or methods to the facts of the case in order to ascertain the relative rights of the parties, with regard to the subject matter of the suit.'" Pinkard v. Pinkard, 12 Va. App. 848, 851, 407 S.E.2d 339, 341 (1991) (quoting Lee v. Lee, 142 Va. 244, 252-53, 128 S.E. 524, 527 (1925)).

Erikson v. Erikson, 19 Va. App. 389, 391, 451 S.E.2d 711, 712-13 (1994).

"A final decree is one '"which disposes of the whole subject, gives all the relief that is contemplated, and leaves nothing to be done by the court."'" Id. at 390, 451 S.E.2d at 712 (quoting Southwest Virginia Hosps. v. Lipps, 193 Va. 191, 193, 68 S.E.2d 82, 83-84 (1951) (citation omitted)).

Mother's petition requested that custody be returned to her. The July 14, 2000 order dismissed that petition. Clearly, the order disposed of the "whole subject" of custody. Nothing was left for the court to act upon. The subsequent proceedings were unrelated to a determination of custody.

Therefore, because the July 14, 2000 order was a final appealable order, we find we have jurisdiction to determine the merits of the cause.

We first address mother's contention that the trial court erred in dismissing her custody petition and the petition to show cause against father.  She argues, pursuant to Code § 8.01-223.1,[2] the assertion of her Fifth Amendment privilege against self-incrimination is not a proper basis for dismissing her petitions.  She further maintains that the discovery sought by father was not relevant to the proceedings.[3]  Father argues

---

[2] Code § 8.01-223.1 states:  "In any civil action the exercise by a party of any constitutional protection shall not be used against him."

[3] The Interrogatories stated:

> 1.  Identify all facts related to each address at which you have resided from November 1997 to present.
> 2.  Identify all facts related to each address at which Jonell D. Finley has resided from November 1997 to present.
> 3.  Identify all facts related to your whereabouts from and each and every country to which you have travelled from 11/15/97 to present in detail.
> 4.  Fully identify all facts related to how you got the child Jonell D. Finley out of the United States in detail and every name and date of birth and social security number she has used or been known by while in your care since 1/1/96.

The Request for Production of Documents stated:

> 1.  Produce all state, and federal tax returns you have filed jointly or individually for income of any nature you or

that the common law "sword and shield" doctrine permitted the dismissal.

While the trial court did not articulate its reasons for dismissal, we necessarily conclude it was under the common law doctrine of "sword and shield."[4]  Father sought dismissal of the petition under Rule 4:12(b)(2)(c), but the trial court could not have dismissed the petition as a sanction under Rule 4:12 because the Rule's sanctions do not apply until an order has been entered and violated.  In this case, such an order was never entered.  Rather, the trial judge, in his ruling from the bench, acknowledged he was not compelling mother to "answer anything" or "produce anything."  The trial court stated:

> She has the choice of either proceeding
> with the discovery or, in the alternative, I
> will grant Mr. Barker's motion for sanctions
> in terms of a dismissal of this action.  I'm
> not going to play a pea and shell game with
> her.  And I cannot force her to by
> utilization of the coercive powers of this
> Court, fine or imprisonment, I cannot coerce
> her to produce this information.  And I
> acknowledge that much, and I'm not doing
> that.

---

> your spouse has earned during the calendar
> years 1995, 1996, 1997, and 1998 regardless
> of the country or state to with which you
> filed.
> 2.  Produce the original passport or
> other document used by Jonell D. Finley or
> you on her behalf from 11/1/97 to present.

[4]  We find Code § 8.01-401(B) does not apply because mother was not called upon by another to "testify on his behalf."  Code § 8.01-401(B).

The Supreme Court of Virginia, in <u>Davis v. Davis</u>, 233 Va.
452, 357 S.E.2d 495 (1987),[5] expounded on the common law doctrine
of "sword and shield."  The Court wrote:

> [T]his rule recognizes that
> historically the privilege against
> self-incrimination was intended solely as a
> shield.  The rule thus provides that a
> moving party cannot use it as a sword to
> sabotage any attempt by the other party,
> either during pretrial discovery or at
> trial, to obtain information relevant to the
> cause of action alleged, and relevant to
> possible defenses to the claim.  <u>Laverne v.
> Incorp. Village of Laurel Hollow</u>, 18 N.Y.2d
> 635, 638, 272 N.Y.S.2d 780, 782, 219 N.E.2d
> 294, 295 (1966), <u>appeal</u> <u>dismissed</u>, 386 U.S.
> 682 (1967).  In other words, the moving
> party "in a civil action who exercises his
> privilege against self-incrimination to
> refuse to answer questions pertinent to the
> issues involved will have his complaint
> dismissed upon timely motion."  <u>Kisting v.
> Westchester Fire Ins. Co.</u>, 290 F.Supp. 141,
> 149 (W.D. Wisc. 1968), <u>aff'd</u>, 416 F.2d 967
> (7th Cir. 1969).  <u>See</u> annot., 4 A.L.R.3d
> 545.  The idea is that it would be unjust to
> permit parties to use the courts to seek
> affirmative relief while at the same time
> deflecting relevant questions, the answers
> to which may constitute a defense to the
> claims asserted.

<u>Id.</u> at 456-57, 357 S.E.2d at 498.

Father contends mother waived her Fifth Amendment claim by
promising to answer discovery.  Father further contends mother
did not file a timely objection to the interrogatories or to the

---

[5] Because Code § 8.01-223.1 was not enacted until July 1,
1985, <u>Davis</u> does not discuss the impact of that section on the
"sword and shield" doctrine.  The decree appealed from was
entered in January 1984.

motion for production.  Father further argues that by only

objecting to the discovery on relevancy grounds, she could not

later object on the basis of self-incrimination.

By letter dated April 20, 1999 to father's counsel,

mother's counsel stated:

> I will have discovery answers to you by
> Friday, April 30, 1999, so you do not have
> to waste your client's money with a
> sanctions motion.  By the way, Ms. Travis
> has not refused to furnish you with sworn
> answers to your questions.  It is my fault,
> as I forgot to send them to her.  Please
> accept my apology.

"Courts indulge every reasonable presumption against a

waiver of fundamental constitutional rights."  White v.

Commonwealth, 214 Va. 559, 560, 203 S.E.2d 443, 444 (1974)

(citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).  The

Supreme Court "has always set high standards of proof for the

waiver of constitutional rights . . . ."  Miranda v. Arizona,

384 U.S. 436, 475 (1966) (citing Zerbst, 304 U.S. 458).

> A waiver of a constitutional right must
> be "an intentional relinquishment or
> abandonment of a known right or privilege."
> Johnson, 304 U.S. at 464.  "Waivers of
> constitutional rights not only must be
> voluntary but must be knowing, intelligent
> acts done with sufficient awareness of the
> relevant circumstances and likely
> consequences."  Brady v. United States, 397
> U.S. 742, 748 (1970) (footnote omitted).

Hunter v. Commonwealth, 13 Va. App. 187, 191, 409 S.E.2d 483,

485 (1991).

> Failure to make a timely defense has been held a waiver. <u>Brooks v. Peyton</u>, 210 Va. 318, 171 S.E.2d 243 (1969) (statutory discharge from prosecution for delay in bringing to trial waived by failure to make timely objection); <u>Hubbard v. Commonwealth</u>, 207 Va. 673, 152 S.E.2d 250 (1967) (statutory bar to double prosecution for one illegal act waived by failure to make timely objection); <u>Driver v. Seay</u>, 183 Va. 273, 32 S.E.2d 87 (1944) (constitutional defense of double jeopardy waived by failure to make timely objection); <u>United States v. Abrams</u>, 357 F.2d 539 (2nd Cir.), <u>cert.</u> <u>denied</u>, 384 U.S. 1001 (1966) (claim of privilege against self-incrimination waived by failure to make timely objection).

<u>Evans v. Commonwealth</u>, 226 Va. 292, 298, 308 S.E.2d 126, 130 (1983).

"The classic description of an effective waiver of a constitutional right is the '"intentional relinquishment or abandonment of a known right or privilege."'" <u>Megel v. Commonwealth</u>, 31 Va. App. 414, 429-30, 524 S.E.2d 139, 147 (Benton, J., dissenting) (citations omitted), <u>aff'd</u>, 33 Va. App. 648, 536 S.E.2d 451 (2000).

> A waiver . . . may be generally defined as a voluntary abandonment of some known legal right, advantage, or privilege, or such conduct as warrants an inference of the abandonment of such right, or the intentional doing of an act inconsistent with claiming it, all of which is usually dependent upon the peculiar circumstances of the case.

<u>The Covington Virginian v. Woods</u>, 182 Va. 538, 547, 29 S.E.2d 406, 410 (1944).

> The essential elements of waiver are knowledge of the facts basic to the exercise of the right and intent to relinquish that right. Weidman [v. Babcock], 241 Va. [40,] 45, 400 S.E.2d [164,] 167 [(1991)]; Fox [v. Deese], 234 Va. [412,] 425, 362 S.E.2d [699,] 707 [(1987)]. Waiver of a legal right will be implied only upon clear and unmistakable proof of the intention to waive such right for the essence of waiver is voluntary choice. Weidman, 241 Va. at 45, 400 S.E.2d at 167; May v. Martin, 205 Va. 397, 404, 137 S.E.2d 860, 865 (1964).

Chawla v. BurgerBusters, Inc., 255 Va. 616, 622-23, 499 S.E.2d 829, 833 (1998).

It is clear that the constitutional rights are those of the individual and can only be waived by that person. Therefore, the letter from mother's counsel indicating the discovery answers would be forthcoming is not a waiver of mother's privilege against self-incrimination.

By initially objecting only to the relevancy of the discovery, mother did not waive her self-incrimination objection. We find nothing in the record to indicate such waiver. A challenge to the relevancy of the discovery was not a "voluntary abandonment" of her privilege nor was it "inconsistent" with claiming the privilege. By challenging the relevancy of the discovery requests, she did no more than have the court determine whether the interrogatories and documents requested were relevant to the subject involved in the "pending action" or whether the information sought appeared reasonably calculated to lead to discovery of "admissible evidence." Rule

4:1(b)(1).  Therefore, if the trial court determined that the information sought was not relevant, mother would not have to assert the privilege.  Clearly, mother did not "abandon" the privilege by initially objecting on relevancy grounds.

Similarly, we find no merit to father's contention that mother did not timely object to the interrogatories.  Pursuant to Rules 4:8(d) and 4:9(b), discovery must be answered and/or objected to within twenty-one days.  Rules 4:8(d) and 4:9(b).  However, "[t]he court may allow a shorter or longer time."  Id. It is apparent from the record that the trial court allowed a "longer time" because it acknowledged mother's privilege in its ruling of June 30, 2000.

Finding that mother did not waive her Fifth Amendment privilege against self-incrimination, we now address whether Code § 8.01-223.1 bars the trial court from dismissing her petitions.  Essentially, we must decide whether mother's invocation of her constitutional right was "used against her."

"A primary rule of statutory construction is that courts must look first to the language of the statute.  If a statute is clear and unambiguous, a court will give the statute its plain meaning."  Loudoun County Dep't of Social Servs. v. Etzold, 245 Va. 80, 85, 425 S.E.2d 800, 802 (1993) (citation omitted). "Therefore, we must accept its plain meaning and not consider rules of statutory construction, legislative history, or extrinsic evidence."  Perez v. Capital One Bank, 258 Va. 612,

616, 522 S.E.2d 874, 876 (1999) (citation omitted). "Courts must give effect to legislative intent, which must be gathered from the words used, unless a literal construction would involve a manifest absurdity." HCA Health Servs. of Virginia, Inc. v. Levin, 260 Va. 215, 220, 530 S.E.2d 417, 420 (2000).

Here, mother clearly exercised a "constitutional protection" in a civil action, her Fifth Amendment privilege against self-incrimination. We cannot conceive of any graver consequence than dismissing the action against mother for exercising that "constitutional protection." Her exercise was "used against" her in the most absolute and final way.

We conclude that Code § 8.01-223.1 barred the trial court from dismissing mother's petitions. We further conclude that, under the facts of this case, Code § 8.01-223.1 supercedes the "sword and shield" doctrine. Therefore, we vacate the dismissal order and remand for a hearing on the merits.

Finally, mother contends the discovery sought was not relevant to the proceedings before the trial court.[6]

In order to determine relevancy, we must again review the history of this long-standing custody battle between the child's parents. In 1997, the trial court permitted the child to remain

---

[6] Under Rule 4:1 discovery is available inter alia, for any matter not privileged that is relevant to the subject matter involved or if the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." Rule 4:1(b)(1).

with mother and allowed mother to remove the child to Ghana. However, the trial court forbade the removal of the child from its jurisdiction pending appeal to this Court. In an unpublished opinion, <u>Joseph E. Finley, Jr. v. Shirley J. Travis</u>, Rec. No. 3060-97-2 (Va. Ct. App. Oct. 6, 1998), we found:

> In defiance of the staying provision of the ruling, the mother and her husband fraudulently removed the child to Ghana. The staying provision was central to the trial court's ruling and was an indispensable element of that ruling. By violating and defeating that provision, the mother has rendered the ruling a practical nullity.

The trial court's ruling was reversed, and the case was remanded for further proceedings. On remand, the trial court awarded custody to father by order of July 6, 1999.

On August 4, 1999, mother filed a petition to amend, asking that custody be returned to her. In a preliminary ruling, the trial court held that mother must show a change in circumstances from the July 6, 1999 order.

Among other matters, mother filed on November 10, 1999, a petition to show cause against father for his failure to pay child support, failure to allow visitation and other matters alleged to violate previous court orders.

Essentially, father's interrogatories sought information concerning the whereabouts of mother and the child from November 1997 to the present and how mother removed the child from the

United States.  Father requested the production of federal income tax returns and the child's passport.

Father's defense to the contempt charge is that he did not know where the child and mother were located and did not know where to send child support payments.  Clearly, the whereabouts of the child and mother are relevant to the contempt charge.

> [Evidence] is relevant, . . . if, when considered in relation to other evidence in the case, it tends to establish a party's claim or defense or adds force and strength to other evidence bearing upon an issue in the case.  McNeir v. Greer-Hale Chinchilla Ranch, 194 Va. 623, 628, 74 S.E.2d 165, 169 (1953).  "The criterion of relevancy is whether or not the evidence tends to cast any light upon the subject of the inquiry."  Id. at 629, 74 S.E.2d at 169.

Breeden v. Roberts, 258 Va. 411, 416, 518 S.E.2d 834, 837 (1999).

> "In a show cause hearing, the moving party need only prove that the offending party failed to comply with an order of the trial court."  [Alexander v. Alexander, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991)] (citing Frazier v. Commonwealth, 3 Va. App. 84, 87, 348 S.E.2d 405, 407 (1986)).  "The offending party then has the burden of proving justification for his or her failure to comply."  Id. (citing Frazier, 3 Va. App. at 87, 348 S.E.2d at 407).  "[T]he inability of an alleged contemner, without fault on his part, to tender obedience to an order of court, is a good defense to a charge of contempt."  Laing v. Commonwealth, 205 Va. 511, 514, 137 S.E.2d 896, 899 (1964) (citation omitted); see also Barnhill v. Brooks, 15 Va. App. 696, 704, 427 S.E.2d 209, 215 (1993) ("A trial court may hold a support obligor in contempt for failure to pay where such

failure is based on unwillingness, <u>not</u> <u>inability</u>, to pay." (emphasis added)).

<u>Commonwealth, Dep't. of Social Services, Div. of Child Support</u> <u>Enforcement ex. rel. Graham v. Bazemore</u>, 32 Va. App. 451, 455-56, 528 S.E.2d 193, 195 (2000).

"[T]he trial court '"has the authority to hold [an] offending party in contempt for acting in bad faith or for willful disobedience of its order."'" <u>Id.</u> at 456, 528 S.E.2d at 195 (quoting <u>Alexander</u>, 12 Va. App. at 696, 406 S.E.2d at 669 (citation omitted)).

Because the trial court must determine whether father's failure to pay child support was in "bad faith" or in "willful disobedience," the fact that the child might have been removed to another country and secreted from father is relevant.

For the same reasons, the child's whereabouts and status were relevant to the custody issue. While the trial court limited the "change in circumstances" to events occurring after the July 6, 1999 order, the court cannot ignore the conditions to which the child was subjected or the efforts mother undertook to separate the child from father. <u>See</u> Code § 20-124.3(3)-(7).

Similarly, the tax returns might show the travels of mother and would be relevant to the custody proceedings, as stated above.

"The granting or denying of [discovery] is a matter within the trial court's discretion and will be reversed only if the

action taken was [an abuse of discretion]."  <u>Rakes v. Fulcher</u>,

210 Va. 542, 546, 172 S.E.2d 751, 755 (1970) (citations

omitted).

### III.  CONCLUSION

For these reasons, we find that mother did not waive her

Fifth Amendment privilege against self-incrimination and the

trial court erred in dismissing mother's petitions pursuant to

Code § 8.01-223.1.  However, we hold that the trial court

correctly ruled that father's discovery propounded to mother was

relevant to the proceeding.  We, therefore, reverse the trial

court's dismissal of mother's petitions.

<u>Reversed and remanded.</u>