COURT OF APPEALS OF VIRGINIA

Present:    Judges Frank, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


FRANCES F. VINSON[1]

                                                    OPINION BY
v.        Record No. 1434-02-4            JUDGE ROBERT P. FRANK
                                                    NOVEMBER 18, 2003
WILLIAM E. VINSON, SR.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David T. Stitt, Judge

Leighton Kirby (Francis J. Prior, Jr.; Siciliano, Ellis, Dyer &
Boccarosse, on briefs), for Kenneth R. Weiner.

David L. Ginsberg (Shoun & Bach, on briefs), for appellee.



        Kenneth R. Weiner (appellant) appeals from an order in a divorce case, sanctioning him

for violating Code § 8.01-271.1.  He argues the trial court erred (1) in precluding a line of

cross-examination, (2) in finding he violated Code § 8.01-271.1 during his representation of

Frances Vinson (wife), and (3) in awarding sanctions that amounted to more than the costs and

fees incurred by William E. Vinson, Sr. (husband).  We find the trial court did not err in its

rulings.

---

        [1] Appellant and appellee presented this case styled as Weiner v. Vinson.  While Weiner is
the subject of sanctions levied in this case, the trial court's order labels the case Vinson v.
Vinson.  While Weiner v. Vinson would be an appropriate style for this matter, neither party has
made a motion to amend the style of the case, either to the trial court or to this Court.  Therefore,
the style of this case is Vinson v. Vinson.

Background

Wife went alone to appellant's law office to ask for his assistance with a divorce. She explained that she and husband agreed on the distribution of their assets and that they had no disagreements about the divorce.

As part of this meeting, appellant filled out a form, labeled "Retainer Agreement," on his firm's letterhead. The form listed "CLIENT" as both wife and husband. It indicated the services rendered by the law firm would include a "Property Settlement Agreement & Will." The Retainer Agreement said, "CLIENT shall remit a retainer of two thousand five hundred [dollars] ($2500.00) . . . ." A notation at the bottom of the first page indicated wife would pay half the retainer and husband would pay the other half. Appellant gave the form to wife, who took it home and had husband sign it. Appellant signed the form on May 23, 2000, after husband and wife had signed it.

Wife later returned to the office with a document she said represented the agreement between her and husband. An associate attorney, supervised by appellant, drafted a property settlement agreement (PSA), which wife took home. The agreement gave husband $50,000 "of the net equity resulting from the sale" of the marital home. As a result, although not explicitly stated in the PSA, wife would receive approximately seventy-five percent of the equity in the home, the most valuable marital asset. The agreement did not indicate that either party was represented by counsel, but did say, "each party represents that he or she has had full opportunity to confer with Counsel of his/her own choosing." Husband and wife signed the PSA before a notary on June 6, 2000.

Appellant never spoke to husband about the divorce nor had he any indication from husband that he agreed to this distribution of property, except for his signature on the final PSA. Neither appellant nor husband made any attempt to contact the other, except for bills sent by

appellant to husband's home. The only time appellant spoke to husband was when husband was with an associate discussing his will. The PSA was not mentioned during this brief encounter.

Two bills were sent for services rendered under the retainer agreement. Both bills were addressed to husband and wife. Wife paid the bills, totaling $2,500, with checks written on a joint checking account she shared with husband.[2]

On July 14, 2000, husband filed a bill of complaint alleging the agreement was "unconscionable and was procured through fraud and duress." On August 8, 2000, husband filed a motion to set aside the PSA and a motion to disqualify appellant as the attorney representing wife. The motion to disqualify cited husband's belief, based on the retainer agreement and the billing, that appellant represented both husband and wife when the PSA was drafted.

Appellant continued to represent wife until November 30, 2000, the morning of the hearing on the motion to set aside the PSA. Sometime prior to that morning, appellant informed the court that he did not represent husband and claimed a hearing on the issue would require numerous witnesses and more than a half-hour of the court's time.

The trial court heard testimony on the unconscionability issue on May 23, 2001. Appellant testified that he did not represent husband, but admitted "I guess you'd have to say that under that [retainer] agreement I represented him." Appellant also testified he did not withdraw from the case earlier because he "did not want to withdraw." He explained, "I was incensed with [husband's counsel]. I'm still incensed." The trial court found the PSA was "unconscionable and invalid."

On September 19, 2001, husband filed a motion for sanctions and attorney's fees, "pursuant to Virginia Code § 8.01-271.1," requesting attorney's fees, costs, "and any other relief

---

[2] Both husband and wife contributed funds to this account.

deemed appropriate by this Court."[3] The motion requested sanctions against both appellant and wife. Appellant admitted during the hearing on this motion that he did not consult anyone regarding the conflict until sometime just before he withdrew. When asked by husband's counsel why he waited until the day before the initial hearing to withdraw, appellant explained, "I thought you were playing games with me when you first withdrew your motion for the withdraw [sic]. And then you came back with it. I didn't think you were playing straight, playing fairly."

---

[3] Code § 8.01-271.1 reads, in part:

> The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, written motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant.

> An oral motion made by an attorney or party in any court of the Commonwealth constitutes a representation by him that (i) to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and (ii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

> If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee.

At the conclusion of the hearing, the trial court found:

> a gross conflict of interest here that was apparent on the face of that [retainer] document. . . . [Appellant] has conceded that he didn't really investigate the ethical issue until way, way late in the game. . . . And I find that [appellant] did not make a reasonable inquiry into the legal and factual basis for his position with regard to the conflict until way late in the game, long after he had been notified of the issue by [husband's attorney]. I find that there was no good faith basis for [appellant's] actions and positions related to the PSA subsequent to [husband's attorney] raising the issue with regard to the conflict. . . . I find that those attorneys' fees were caused or incurred because of the position taken by [appellant] orally and in writing to the Court.

The trial court entered an order awarding sanctions under Code § 8.01-271.1 in the amount of $23,100. This figure apparently was based on husband's fees and costs related to the motion to set aside the PSA, reimbursement of the $1,250 that husband paid to appellant for the drafting of the PSA, and the motion for sanctions. The motion for sanctions against wife was dismissed.

Analysis

A. Jurisdiction

First, this Court must address its jurisdiction over this appeal. Initially, appellant requested review of this case from the Supreme Court of Virginia. Because the case arose out of a divorce matter, the Supreme Court transferred the appeal to the Court of Appeals of Virginia. See Code § 17.1-405(3)(b). However, in transferring the appeal, the Supreme Court did not address whether this order is a "final judgment, order, or decree" in a divorce case, see id., or is an appealable interlocutory order deciding an issue that arose during those proceedings.[4] As this case clearly does not involve a final decree of divorce, we must determine *sua sponte* whether review is permitted under Code § 17.1-405(4), which allows consideration of interlocutory orders.

---

[4] The final order of divorce is not before us, and the record suggests the trial court has not entered a final order.

- 5 -

Under Code § 17.1-405(4), this Court has jurisdiction over interlocutory orders that adjudicate "the principles of a cause." As the Supreme Court pointed out over a hundred years ago, "It is difficult, if not impossible, to define exactly what is meant by adjudicating the principles of the cause in such a way as to fit every case . . . ." Lancasters' Adm'r v. Lancaster's Adm'r, 86 Va. 201, 204, 9 S.E. 988, 990 (1889). Traditionally, Virginia courts have defined an appealable interlocutory order generally as a decree that adjudicates the principles of a cause:

> such that "'the rules or methods by which the rights of the parties are to be finally worked out have been so far determined that it is only necessary to apply those rules or methods to the facts of the case in order to ascertain the relative rights of the parties, with regard to the subject matter of the suit.'"

Travis v. Finley, 36 Va. App. 189, 195, 548 S.E.2d 906, 909 (2001) (quoting Pinkard v. Pinkard, 12 Va. App. 848, 851, 407 S.E.2d 339, 341 (1991) (quoting Lee v. Lee, 142 Va. 244, 252-53, 128 S.E. 524, 527 (1925))).

The parties and the trial court addressed the motion for sanctions as a part of the divorce proceedings, even though appellant no longer represented a party in those proceedings. The motion and the order granting sanctions are styled Vinson v. Vinson, using the same case number used for the divorce proceedings. Therefore, as brought by the parties and considered by the trial court, the order imposing sanctions is part of the divorce proceedings.[5] Clearly, the order did not conclude the issues in the divorce case and is not a final order to that action.

However, the appealed order sanctions only appellant, who was the attorney initially representing at least one of the parties in this divorce.[6] By the time the order was entered, appellant had withdrawn from the case, and he had no further involvement with the divorce. If

---

[5] Appellant could have moved for separation of the sanction action from the divorce case, but he did not.

[6] The trial court ordered that the sanctions imposed on appellant be paid to husband.

the motion for sanctions had been severed from the divorce case, then this order clearly would constitute a final order as it "'disposes of the whole subject, gives all the relief that is contemplated, and leaves nothing to be done by the court.'" Travis, 36 Va. App. at 196, 548 S.E.2d at 909 (quoting Erikson v. Erikson, 19 Va. App. 389, 390, 451 S.E.2d 711, 712 (1994)). Effectively, then, this order is a "final" order, completely resolving the issue of sanctions against appellant and allowing for execution of the judgment. See Code § 8.01-466 *et seq.*

Such an order, resolving all the issues involving sanctions against appellant, while leaving the underlying divorce action unresolved, is an appealable interlocutory order within the meaning of Code § 17.1-405(4). The claims of husband for sanctions against appellant are completely resolved, finalizing that part of the suit. Therefore, we have jurisdiction to consider appellant's arguments.[7]

### B. Cross-Examination

Appellant argues the trial court erred in sustaining an objection to his cross-examination of husband on the issue of husband's belief that appellant represented him. We find the trial court did not err. Even if the court erred, appellant did not proffer enough information to allow this Court to determine any prejudice occurred from this alleged error.

At the hearing on the motion to sanction, husband was cross-examined by appellant regarding his divorce. When the questions began to address the involvement of appellant and his law firm, husband's counsel objected. In response, appellant indicated the line of questioning was necessary because:

> I'm attacking [husband's] knowledge and understanding of what was going on at this time so as to test his allegation that he had a good faith belief that he was being represented by [appellant].

---

[7] We do not address whether sanctions assessed against a *party* to the suit constitute appealable interlocutory orders.

It's a limited purpose. I mean, I've got to know when he talked to him, how he talked to him, what the arrangements were, how this transpired, unless I get a stipulation as to what I said in opening.

At this point, husband stipulated that he "never spoke or met with [appellant] until the day he signed his will."

Appellant still argued he was "entitled to find out why he relied on [the retainer agreement]," although he acknowledged Code § 8.01-271.1 requires a finding regarding "the mind of the lawyer," not the mind of the client. The trial court indicated it was not going to retry the issue of the PSA's unconscionability and took judicial notice of the previous actions of the court.

The trial court imposed sanctions based on the objective reasonability[8] of *appellant's* conduct and inquiries, as required under Code § 8.01-271.1. See Flora v. Shulmister, 262 Va. 215, 220, 546 S.E.2d 427, 429 (2001). A client's (or third-party's) beliefs and/or actions regarding the representation are not relevant under this Code section unless those beliefs and/or actions assist in the determination of whether the attorney's conduct or representations were "well grounded in fact, and warranted under existing law or by a good faith argument for the extension, modification, or reversal of existing law." Id.

Here, husband's failure to communicate with appellant[9] did not excuse appellant's failure to investigate any conflict of interest in his representation of wife. Husband's beliefs would not provide an objective basis for appellant's actions and representations to the trial court. Consequently, we cannot find that this line of questioning was relevant and, therefore, admissible. The trial court did not err in excluding an irrelevant line of questioning.

---

[8] This issue is discussed below.

[9] Appellant did communicate with husband, although not substantively. Appellant sent bills for his representation to husband and greeted husband in the office during the writing of his will.

Additionally, to successfully argue for reversal of a trial court's decision, an appellant must make a proffer that discloses the nature of the excluded evidence. Joynes v. Payne, 36 Va. App. 401, 418, 551 S.E.2d 10, 18 (2001). Without such a proffer, this Court cannot determine whether the trial court abused its discretion to the prejudice of the appellant. See Proctor v. Commonwealth, 40 Va. App. 233, 242, 578 S.E.2d 822, 827 (2003).

Here, the record does not include a proffer of any evidence or facts that further cross-examination of husband would have provided. Everything appellant claimed he needed to ask in cross-examination was already in evidence either by stipulation or through direct testimony. Given appellant did not proffer what additional information was available only through cross-examination, we cannot determine whether the exclusion prejudiced appellant. We cannot find that the trial court erred in refusing to allow the questions.

### C. Violation of Code § 8.01-271.1

Under Code § 8.01-271.1, every motion signed or made orally by an attorney constitutes a representation that "to the best of his knowledge, information, and belief, formed after reasonable inquiry," the argument or legal position is "well grounded in fact," and is well grounded in current law or is made in good faith application of law that should be extended, modified, or reversed. If this statute is violated, then the trial court shall impose upon the attorney and/or the represented party "an appropriate sanction." The trial court found appellant did not make a reasonable inquiry or have a good faith basis for arguing that he had no conflict of interest in his representation of wife in the action to set aside the PSA. Appellant argues this ruling was in error.

This Court reviews an award of sanctions for abuse of discretion by the trial court. Oxenham v. Johnson, 241 Va. 281, 287, 402 S.E.2d 1, 4 (1991).

> In applying that standard, we use an objective standard of
> reasonableness in determining whether a litigant and his attorney,

> after reasonable inquiry, could have formed a reasonable belief that the pleading was well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and not interposed for an improper purpose.

Flippo v. CSC Assocs. III, L.L.C., 262 Va. 48, 65-66, 547 S.E.2d 216, 227 (2001). See also Gilmore v. Finn, 259 Va. 448, 466, 527 S.E.2d 426, 435 (2000). In this context, we review the trial court's determination that appellant did not made a reasonable inquiry into the conflict of interest and that he did not reasonably believe that his representations to the court, both orally and in his pleadings, were well grounded or made in good faith.

We agree with the trial court that appellant did not conduct a reasonable inquiry into the conflict of interest presented by his representation of wife nor did he have a reasonable basis to believe no conflict existed. On its face, the retainer agreement established an attorney-client relationship between him and husband, as appellant conceded in his testimony. Appellant, or his firm, also represented husband in the preparation of his will. Appellant billed husband for his services.

Appellant contends on appeal that husband did not contact him, therefore, he did not represent husband. However, husband's lack of direct communication with appellant did not alleviate appellant's responsibility to contact husband about the divorce, given the retainer agreement, if only to ensure wife's representations were correct. Additionally, before he represented to the trial court that he had a defense, which would require a long hearing and five witnesses, appellant should have researched or discussed the conflict of interest motion, which he admitted he did not do. Appellant also testified he did not withdraw from the case initially because he was "incensed," an emotional response that did not justify ignoring the facts underlying husband's motion for appellant to withdraw.

Given the facts in this case, appellant was not reasonable in his continued representation of wife or in his objection to the motion to disqualify him. The trial court did not abuse its discretion in awarding sanctions.

### D. Amount of Sanctions

The trial court imposed sanctions of $23,100, which amounted to all of husband's legal expenses from the preparation of the PSA until the conclusion of the motion for sanctions. Appellant argues this award exceeded the amount authorized by Code § 8.01-271.1. He claims such awards are limited to attorney's fees for the prosecution of the motion to disqualify and the costs associated with that motion. We disagree.

Code § 8.01-271.1 allows the court to impose "an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including reasonable attorney's fees." This language does not limit sanctions to the expenses incurred as a result of the motion. The statute says only that such expenses *can be included* in the sanction, suggesting other amounts can be included also. Any other reading of the statute would make the term "including" meaningless. See Rasmussen v. Commonwealth, 31 Va. App. 233, 238, 522 S.E.2d 401, 403 (1999) (noting that courts prefer to use the plain meaning of words in a statute); Gray v. Graves Mountain Lodge, Inc., 26 Va. App. 350, 356, 494 S.E.2d 866, 869 (1998) (explaining that courts should avoid interpretations that make a word within a statute meaningless).

Additionally, the two main purposes of sanctions awards under the statute are punishment and deterrence. Cardinal Holding Co. v. Deal, 258 Va. 623, 632-33, 522 S.E.2d 614, 620 (1999). Allowing only reimbursement of costs associated with a motion made under Code § 8.01-271.1 would not always satisfy these purposes. Therefore, sanctions can exceed the amount necessary

to reimburse the costs of litigating an action under Code § 8.01-271.1, as long as the sanctions imposed are reasonable. See id. (rejecting the argument that awards under Code § 8.01-271.1 are limited to costs).

We find the trial court imposed reasonable sanctions in this case. The amount is commensurate with the costs of the motion to have the PSA declared unconscionable. The amount of $23,100 is not unreasonable, given the language and the purposes of the statute and the legal expenses incurred by husband in this matter.

CONCLUSION

We find the trial court did not err in awarding sanctions against appellant.

Affirmed.