## CIRCUIT COURT OF LOUDOUN COUNTY

Lisa Michelle O'Donnell

    v.

Frank Byron O'Donnell

January 8, 2002

Case No. (Chancery) 19769

BY JUDGE JAMES H. CHAMBLIN

This divorce case came before the Court on November 26, 2001, for the presentation of evidence and argument on the request of the Plaintiff, Lisa Michelle O'Donnell, for an award of attorney's fees and costs. Ms. O'Donnell appeared with her attorney, Donald S. Caruthers, Jr. The Defendant, Frank Byron O'Donnell, appeared *pro se*. He had been represented by counsel since this case was initiated in February 2000. His last attorney, Jahangir Ghobadi, was granted leave to withdraw on November 19, 2001.

After consideration of all the proceedings in this protracted divorce litigation, the evidence, and argument presented on November 26, 2001, Ms. O'Donnell is granted an award of attorney's fees in the amount of $20,000.00 to be paid by Mr. O'Donnell on or before July 1, 2002.

The chronology of the extensive litigation between the parties is as set forth in the "Statement of Case Chronology" offered into evidence by Ms. O'Donnell on November 26, 2001. Mr. O'Donnell did not object or point out any errors in the "Statement."

Litigation between the parties began as a result of an altercation on February 6, 2000. Initially, the parties litigated requests for protective orders in the Loudoun Juvenile and Domestic Relations District Court (JDR Court). The JDR Court proceedings culminated with a consent order embodying a so-called "nesting agreement" entered on April 10, 2000.

In the meantime, Ms. O'Donnell initiated the litigation in this Court when she filed her bill of complaint on February 9, 2000. The first extensive hearing was a *pendente lite* hearing before former Judge Jean Harrison Clements on April 19 and 20, and May 8 and 9, 2000. Mr. O'Donnell filed a subsequent motion to modify *pendente lite* support, which was heard by Judge Burke F. McCahill on March 1 and 26, 2001.

Even though Mr. Caruthers and Mr. Ghobadi should have known better considering the history of this case, it was set down for a final hearing on the grounds of divorce, custody, visitation, child and spousal support, equitable distribution, and attorney's fees and costs for three days, June 27, 28, and 29, 2001. Not unexpectedly, the hearing did not conclude on June 29, 2001. It was continued and heard on all or part of five subsequent days, July 9, 10, and 18, and August 1 and 30, 2001. The parties agreed to bifurcate the issue of attorney's fees and costs. I announced my decision on the remaining issues from the bench on September 18, 2001.

By my estimation, the eight days utilized for the hearing consumed over 43 hours of court time.

Almost every issue that could be contested in a divorce case was contested in this case. The contested issues included:

1. Mr. O'Donnell's request for a divorce from Ms. O'Donnell on the ground of adultery. Ms. O'Donnell sought a no-fault divorce;

2. Custody and visitation of the children;

3. Equitable distribution with the major contested issues of:

    (a) Value of the marital residence,

    (b) Ms. O'Donnell's contribution of her separate property to the acquisition of the marital residence and the application of the "Brandenburg Formula,"

    (c) Division of the tangible personal property,

    (d) Division of stock and a rollover IRA, and

    (e) Allocation of the debts of the parties;

4. Permanent spousal and child support with the major contested issue being the income of the parties, especially the income of Mr. O'Donnell.

Ms. O'Donnell has incurred attorney's fees and costs with Mr. Caruthers in the total amount of $86,782.10 for the period from February 7, 2000, to

November 20, 2001. Of that amount, $2,780.00 relates to the proceedings in the JDR Court, and $84,002.10 relates to the proceedings in this Court. She does not ask for a specific amount to be awarded to her. She asks only for a fair and equitable award.

Mr. Caruthers has continually represented Ms. O'Donnell during this litigation. However, Mr. O'Donnell has consulted with or been represented by at least four separate attorneys. After November 19, 2001, Mr. O'Donnell has been representing himself. The only evidence of attorney's fees incurred by Mr. O'Donnell is that Mr. Ghobadi, his last attorney, has sued him for attorney's fees totaling $19,918.13. Mr. O'Donnell offered evidence of the hourly rate for two of his other attorneys, but he did not offer evidence of the fees he incurred with them.

Mr. O'Donnell takes the position that Ms. O'Donnell is not entitled to an award of attorney's fees and costs.

Va. Code § 20-79(b) and § 20-99(5) provide the statutory authority that an award of counsel fees and costs in a divorce case lies within the discretion of the court. An award is based on the circumstances and equities of the entire case. *Gilman v. Gilman*, 32 Va. App. 104, 124, 526 S.E.2d 763 (2000). The Court can consider the respective financial positions of the parties, *Theismann v. Theismann*, 22 Va. App. 557, 471 S.E.2d 809 (1996), aff'd upon rehearing en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996); their incomes, assets, and ability to pay their own attorney's fees, *Artis v. Artis*, 4 Va. App. 132, 138, 354 S.E.2d 812 (1987); the bona fide claims of the parties, *Richardson v. Richardson*, 30 Va. App. 341, 516 S.E.2d 726 (1999); and the time expended and services rendered by counsel. *Westbrook v. Westbrook*, 5 Va. App. 446, 458, 364 S.E.2d 523 (1988).

Although there is no reported divorce case directly on point, I think that an award of attorney's fees in a divorce case must be reasonable. In non-divorce cases, the Supreme Court has provided guidance in determining the reasonableness of attorney's fees in *Tazewell Oil Co. v. United Va. Bank*, 243 Va. 94, 413 S.E.2d 611 (1992); *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven, L.P.*, 253 Va. 93, 480 S.E.2d 471 (1997); and *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 499 S.E.2d 829 (1998). In determining reasonableness, the court may consider such things as the time and effort expended by counsel, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees are consistent with those generally charged for similar services, and whether the services were necessary and appropriate.

4

Because Ms. O'Donnell has been awarded spousal support, it is an abuse of discretion not to award attorney's fees. *Artis v. Artis*, 4 Va. App. 132 (1987); *Thomas v. Thomas*, 217 Va. 502, 229 S.E.2d 887 (1976).

Mr. O'Donnell has a greater income than Ms. O'Donnell. I found his gross income to be $8,301.00 per month while Ms. O'Donnell's gross income was found to be $2,253.00 per month. The equitable distribution decision amounts to an equal division of the marital assets between the parties. Ms. O'Donnell elected to purchase Mr. O'Donnell's equity in the marital residence, for which he is to receive over $56,000.00 in cash provided he transfers certain shares of stock, savings bonds, and a portion of his rollover IRA to Ms. O'Donnell. See the decree entered herein on November 19, 2001. Mr. O'Donnell has the greater income and liquid assets. However, I cannot ignore the fact that Ms. O'Donnell has voluntarily agreed to refinance the marital residence in order to buy out Mr. O'Donnell's equity with a new loan of $431,000.00. See Plaintiff's Motion for Approval of Acquisition of Former Marital Residence, filed November 16, 2001.

There is no exact way to evaluate each factor considered in determining an award of attorney's fees. After considering all the circumstances of this case, listed below are the factors that weighed the heaviest with me in deciding on an award.

Both parties had a desire to litigate, but I feel that Mr. O'Donnell's desire greatly exceeded Ms. O'Donnell's. From the beginning Mr. Caruthers' letters to opposing counsel contained requests to try and settle the case. Few of the letters from Mr. O'Donnell's attorney contained such a request. The most sincere is found in a letter from Gary Davis, Mr. O'Donnell's attorney in the JDR Court, to Mr. Caruthers dated February 25, 2000. Shortly thereafter, Mr. O'Donnell discharged Mr. Davis. Mr. O'Donnell says it was because he could not afford Mr. Davis' fees. I think it is more likely that Mr. O'Donnell wanted an attorney who would litigate rather than try to settle.

Mr. O'Donnell not only wanted an attorney to litigate but he wanted an attorney who would get him what he wanted. I do not think it was the attorney's fees incurred that caused Mr. O'Donnell to terminate Jon Huddleston after Ms. O'Donnell substantially prevailed in the *pendente lite* hearing before Judge Clements or to terminate Mr. Ghobadi after Ms. O'Donnell substantially prevailed in the eight-day final hearing before me.

Mr. O'Donnell may have tried to settle some of the issues directly with Ms. O'Donnell, but the only meaningful effort to settle from his attorney came from Mr. Ghobadi in June 2001, a few days before the start of the final hearing. See Mr. Ghobadi's letter to Mr. Caruthers dated June 19, 2001. I think it is significant that the settlement offer of Ms. O'Donnell to which Mr. Ghobadi was replying on

behalf of Mr. O'Donnell contained terms more favorable to him than what I ultimately decided. See pages 10 and 11 of the "Statement of Case Chronology" for a comparison of the parties' settlement positions.

Mr. O'Donnell's delay in discovery responses, especially as to his income, worked a detriment to Ms. O'Donnell. The last minute responses just prior to the *pendente lite* hearing before Judge McCahill placed her in the difficult position of having to go forward without an expert on the issue of Mr. O'Donnell's income. It led to a reduction in support adverse to Ms. O'Donnell. When she was able to present such expert testimony at the final hearing, the result was much less detrimental to her. Ms. O'Donnell also had to file various motions to compel discovery from Mr. O'Donnell. An award of attorney's fees for one such motion heard by Judge Clements in April 2000 was deferred to the final hearing.

Although Judge Clements did not award attorney's fees as a result of the *pendente lite* hearing before her in April and May 2000, Judge McCahill did order that an award of fees be reserved to the equitable distribution hearing as a result of the *pendente lite* modification motion he heard in March 2001.

Mr. O'Donnell argues that Mr. Caruthers spent too much time on this case. He feels that Mr. Caruthers had a responsibility to keep his fees down. At least five times on November 26, 2001, Mr. O'Donnell commented that Ms. O'Donnell, with an annual income of about $24,000.00, incurred attorney's fees of over $86,000.00. Mr. O'Donnell feels that he went about utilizing counsel the better way, i.e., he used counsel realistically by looking at what resources he had available and what he could afford. He feels Ms. O'Donnell did not.

It is obvious Mr. Caruthers spent a considerable amount of time on this case. I think he did what he had to do in order to represent Ms. O'Donnell effectively. His hourly rate of $200.00 per hour is certainly not unreasonable in the Northern Virginia area for a practitioner with the expertise of Mr. Caruthers. Even Mr. O'Donnell admitted on November 26, 2001, that Mr. Caruthers did a "heck of a job" in representing Ms. O'Donnell. Mr. Caruthers' hours, as well as those of his paralegal, were not unreasonable in this litigation.

I feel it is significant that Mr. O'Donnell changed his position during the final hearing on the custody of the children. At the *pendente lite* hearing in April and May 2000, Ms. O'Donnell was awarded sole legal and physical custody of the children. At the start of the final hearing on June 27, 2001, the parties stipulated to joint legal custody with physical custody being contested. However, during the hearing, Mr. O'Donnell withdrew from the stipulation and asked for sole legal and physical custody of the children.

6

Mr. O'Donnell never offered a satisfactory reason for withdrawing from the stipulation. Mr. Ghobadi argued that it had something to do with Mr. O'Donnell's position that Ms. O'Donnell is an unfit parent because she exposed the children to an adulterous relationship. Mr. O'Donnell stated on November 26, 2001, that he changed his mind when he learned from a former babysitter that Ms. O'Donnell was cohabiting with Greg Cherpes in the marital residence with the children. However, during the final hearing, the former babysitter did not testify that Ms. O'Donnell and Mr. Cherpes were cohabiting. Even after the former babysitter testified, Mr. O'Donnell still pursued his request for sole legal and physical custody.

When Ms. O'Donnell asserted her rights under the Fifth Amendment to questions from Mr. Ghobadi about an alleged adulterous relationship with Mr. Cherpes, Mr. O'Donnell moved the Court to strike Ms. O'Donnell's claim for custody of the children. He based his motion on Va. Code § 8.01-401 and *Davis v. Davis*, 233 Va. 452, 357 S.E.2d 495 (1985). The oral motion was denied because Va. Code § 8.01-223.1 (enacted after *Davis* was decided) specifically prevents the exercise of a constitutional right by a party in a civil case from being used against him. Not accepting this ruling, Mr. O'Donnell renewed his motion in writing. This motion was again argued and denied. Although I do not think that the motion was sanctionable under Va. Code § 8.01-271.1, the persistence of Mr. O'Donnell and his counsel in pursuing it after the first adverse ruling prolonged an already lengthy hearing. The written motion added nothing to the oral motion.

Mr. O'Donnell complains that Mr. Caruthers spent an excessive amount of time reviewing the documents produced by Mr. O'Donnell concerning his income and preparing for the final hearing. Evidence concerning Mr. O'Donnell's income consumed a considerable portion of the hearing. It was time-consuming because of the way Mr. O'Donnell chose to operate his business. He is a one-man personal service business, but he chose to utilize two corporations in providing his services. He had to expect that it would take not only a considerable amount of Mr. Caruthers' time but also expert help to prepare for the hearing as to Mr. O'Donnell's income for support purposes. It is significant that Ms. O'Donnell's evidence as to Mr. O'Donnell's income was based solely on documents produced, sometimes belatedly, by Mr. O'Donnell.

I cannot find that the time spent on this case by Mr. Caruthers and his paralegal were unreasonable. I cannot find that Mr. Caruthers unreasonably refused to use his paralegal any more than he did. If anything, I feel that Mr. Caruthers used his paralegal more than most other attorneys would have under the circumstances of this case.

I do not agree with Mr. O'Donnell that Mr. Caruthers should have returned to his nearby office when I had to recess this case and take up other matters. If Mr. O'Donnell will recall, when I had to interrupt this case to take up another case, I did not take a recess between cases. I did not want any litigant to wait any more than necessary. I expected the parties and counsel to be ready to resume the case as soon as I finished the other case. To be able to do that, counsel had to remain in or near the courtroom. This is exactly what Mr. Caruthers did, and he was correct in doing so.

Counsel in any case have a duty to explain to their clients that not only is litigation expensive but also there will be times when they will be charged while counsel waits for the case to be called. Considering how counsel for both parties vastly underestimated the amount of time it would take for the final hearing, I do not see how Mr. O'Donnell can now complain.

I do agree with Mr. O'Donnell as to the trial memorandum that Mr. Caruthers filed on the eighth day of the final hearing. It was not requested. Although it was helpful to me, I feel that it was something above and beyond what was reasonably necessary.

Ms. O'Donnell substantially prevailed in this litigation.

After considering all the foregoing, I think that Mr. O'Donnell should pay approximately 25% of Ms. O'Donnell's attorney's fees and costs. Ms. O'Donnell is granted an award of attorney's fees and costs in the amount of $20,000.00 to be paid in full on or before July 1, 2002. An order consistent herewith has been entered.