COURT OF APPEALS OF VIRGINIA

Present:   Judges Chaney, Frucci and Senior Judge Annunziata
Argued at Fairfax, Virginia

**PUBLISHED**

MICHAEL TIMOTHY JOHNSON

v.      Record No. 0743-23-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE VERNIDA R. CHANEY
JANUARY 7, 2025

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A.B. Willis, Judge

James Joseph Ilijevich for appellant.

Kelly L. Sturman, Assistant Attorney General (Jason S. Miyares,
Attorney General; Collin Chayce Crookenden, Assistant Attorney
General, on brief), for appellee.


Michael Timothy Johnson was convicted at a bench trial of one count of aggravated sexual battery and two counts of taking indecent liberties with a minor under the age of 15. Code §§ 18.2-67.3, -370. Johnson asserts that the circuit court erred by (1) finding the evidence sufficient to support his convictions; (2) denying his motion to set aside the verdict based on the failure to disclose exculpatory evidence; (3) denying his motion to set aside the verdict based on the Commonwealth's failure to concur on the record to his waiver of jury trial; (4) denying his renewed motion to strike; and (5) denying his motion to continue his sentencing hearing.[1] Finding no error, this Court affirms the circuit court's judgment.

---

[1] Johnson's original assignments of error included an argument that "the trial court erred when it granted the Commonwealth's motion to introduce out of court [sic] statements of the complaining witness under the 'Tender Years' statute." Johnson withdrew this assignment because the statement in question "was not introduced into evidence" at his trial.

BACKGROUND

Johnson is the uncle of J.D.'s[2] mother, Audrey Waters. J.D. was born on November 9, 2011. In December 2017, Johnson was paroled to the home of Waters's sister, Desiree, who lived in Spotsylvania County. Once in 2018, Johnson spent the night at Waters's house in Stafford County. When Waters woke up the next morning, Johnson was lying next to her, touching her between her legs. When she kicked him, he got up and later apologized in a Facebook message. Waters did not report the incident to police, but she discussed it with her family.

In December 2018, Desiree moved to a "three level townhouse" on the same street as Waters's home at the time. In May 2019, Johnson moved into the basement of Desiree's home. Waters was going through a high-risk pregnancy, for which she was in and out of the hospital. Johnson, therefore, often helped care for Waters's children and regularly spent time in her garage. He moved out of Desiree's house in May or June 2020.

J.D. recalled that once, while J.D. was in the basement at Desiree's house, Johnson lifted her shirt "to [her] stomach" and "looked inside of it," which scared her, and she ran away. Another time, J.D. encountered Johnson in Waters's garage where he was watching a video on his laptop. Johnson turned his computer screen toward J.D. to show her the video, which depicted a naked boy on top of a naked girl. The video made J.D. "feel weird" and "disgusted." J.D. also recalled that once Johnson was lying beside her with his pajamas on. Johnson first pulled her shirt up to expose her breasts and then "took something out" of a hole in his pajamas "near his boy parts" and "rubbed it on [her]."[3] On another occasion, while in the garage at Waters's house, Johnson pulled J.D. down

---

[2] We refer to the victim by her initials to protect her privacy.

[3] J.D. admitted on cross-examination that she did not disclose the part about Johnson's pajama bottoms before her testimony at trial because she was "kind of confused and scared." She told her grandmother about it, but she failed to disclose that part of the incident to the

onto his lap and held her there against her will. She felt his "man part"[4] in between her legs

growing "bigger and bigger." She had seen a "man part" on the video Johnson had previously

shown her. When she tried to stand up, Johnson "just kept pulling [her] back down" until she broke

free and ran upstairs. There was one occasion in which Johnson slapped J.D. "near [her] butt."

Johnson did not say anything to J.D. during any of these events, and J.D. did not initially tell anyone

about them because she was scared. J.D. finally disclosed the episodes to her aunt after Desiree

caught J.D. touching her "baby sister." J.D. reported the incidents to Waters on December 22, 2020.

Waters immediately called Child Protective Services, and when she received no response by

December 23, 2020, Waters notified the police.

A grand jury indicted Johnson on one count of contributing to the delinquency of a minor,

two counts of taking indecent liberties with a minor, and one count of aggravated sexual battery.

The case was originally scheduled for a jury, but Johnson later agreed to a bench trial. The

Commonwealth therefore filed a "jury call-off" form in the clerk's office, rescheduling the trial to a

different day. Then, on the morning of trial, the court engaged in the following colloquy with

Johnson:

> THE COURT: All right. Now, you understand this was originally
> set with a jury and now it's going to be tried before the Judge, are
> you comfortable with that decision?
>
> JOHNSON: Yes, ma'am.
>
> THE COURT: And you have agreed to waive your right to a jury?
>
> JOHNSON: Yes, ma'am.
>
> THE COURT: Okay. Have there been any plea offers made in the
> case?

authorities until trial. She also admitted that she lied during Johnson's preliminary hearing, when she said she had never seen Johnson's "boy parts."

[4] The transcript of the proceedings before the circuit court shows that the terms "boy parts" and "man parts" are used interchangeably.

[PROSECUTOR]: Judge, there was some discussion but it was made clear that there was no room for agreement.

THE COURT: Okay. That's fine. I just have to know if there were and if they were communicated.

[PROSECUTOR]: Yes, ma'am.

THE COURT: All right. Now, sir, did you understand all of the Court's questions?

JOHNSON: Yes, ma'am.

THE COURT: Were you truthful when you responded?

JOHNSON: Yes, ma'am.

THE COURT: Did you have any questions for the Court before we proceed?

JOHNSON: No, ma'am.

The circuit court then conducted a bench trial and, after the Commonwealth rested its case, Johnson moved to strike the evidence upon his assertions that J.D. was not a credible witness and that the evidence failed to prove some elements of the offenses. The circuit court denied the motion to strike. Following a renewed motion to strike and closing arguments, the circuit court convicted Johnson of aggravated sexual battery and two counts of taking indecent liberties with a minor.[5] The circuit court then ordered a presentence investigation report and a psychosexual evaluation and scheduled the matter for sentencing.

Johnson moved to set aside the verdict, arguing that the evidence was insufficient to support his convictions for taking indecent liberties with a minor. On October 21, 2022, the circuit court held a hearing on Johnson's motion. Johnson argued that the Commonwealth failed to prove he acted with the requisite "lascivious intent." By letter opinion dated December 1, 2022, the circuit court found that "there [were] multiple acts or occasions demonstrating lascivious intent." These

---

[5] The circuit court acquitted Johnson on contributing to the delinquency of a minor.

included "lifting [J.D.'s] shirt on two different occasions," "making [J.D.] watch pornographic videos," and "[e]vidence of his arousal" when he held J.D. "on his lap against her will." Thus, the circuit court found that J.D.'s testimony sufficiently demonstrated the lascivious intent necessary to support Johnson's convictions.

Johnson filed several additional post-trial motions to reconsider the evidence and to set aside the verdicts. In one such motion, Johnson alleged improper procedure because there was no affirmative consent of the Commonwealth to proceed with the bench trial. While acknowledging "that the jury call-off form . . . is, in fact, an assertion of the Commonwealth's waiver" to a trial by jury, Johnson argued that the form, standing alone, provided an insufficient record of the Commonwealth's waiver "as required by the Constitution or the statute." The circuit court issued a letter opinion in which it found that "the Commonwealth . . . initiated and filed the jury call-off form, requesting the jury be removed from the December 7 jury trial date, and requesting the case be continued . . . for a bench trial." The circuit court therefore concluded that the Commonwealth clearly waived its right to a jury trial and denied Johnson's motion to reconsider and to set aside the verdict.

Before the scheduled sentencing hearing, Dr. Susan Frank, the psychologist assigned to prepare Johnson's psychosexual evaluation, sent a letter to the circuit court indicating that she had attempted on two occasions to conduct the evaluation, but Johnson refused. The letter indicated that Johnson "was neither rude nor disrespectful," but stated "he was refusing due to his belief that the verdict in the case was going to be vacated and/or overturned." Dr. Frank was therefore unable to complete the evaluation. At the sentencing hearing, Johnson said that he "wished to participate in the report" and asked for a continuance. Finding that "at this point it would appear that Mr. Johnson is manipulating the Court to his advantage to effect continued delays of a sentence," and stating that "[a]t some point closure has to occur," the circuit court denied Johnson's request for a continuance.

The circuit court sentenced Johnson to 40 years of incarceration, with 17 years suspended for a period of 40 years of good behavior. Johnson noted this appeal.

ANALYSIS[6]

I. Sufficient evidence to sustain convictions

Johnson argues that the evidence failed to prove he committed aggravated sexual battery because the witnesses "were inconsistent multiple times on key elements of their testimony." He also argues that the evidence was insufficient to prove his convictions for taking indecent liberties with a minor "when there was no evidence that any of [his] actions were carried out with lascivious intent."

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the

---

[6] In his second and fifth assignments of error, Johnson argues that the circuit court erred by failing to set aside the guilty verdicts and denying his motion to strike based on allegedly exculpatory evidence that he had not been provided. Under Rule 5A:20, "an appellant's opening brief must contain 'argument (including principles of law and authorities) relating to each assignment of error.' 'Unsupported assertions of error do not merit appellate consideration.'" *Mertz v. Sullivan*, 82 Va. App. 762, ___ (2024) (citation omitted) (first quoting Rule 5A:20(e); and then quoting *Fadness v. Fadness*, 52 Va. App. 833, 850 (2008)). Johnson did not develop these arguments as required by Rule 5A:20. Therefore, assignments of error two and five are waived.

conviction, the reviewing court is not permitted to substitute its own judgment . . . ." *Lucas v. Commonwealth*, 75 Va. App. 334, 342 (2022) (quoting *McGowan*, 72 Va. App. at 521).

A. *Aggravated Sexual Battery*

"An accused is guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and . . . [t]he complaining witness is less than 13 years of age . . . ." Code § 18.2-67.3(A)(1). "'Sexual abuse' means an act committed with the intent to sexually molest, arouse, or gratify any person, where . . . [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts." Code § 18.2-67.10(6)(a). "Intimate parts" are "the genitalia, anus, groin, breast, or buttocks of any person, or the chest of a child under the age of 15." Code § 18.2-67.10(2)

Any potential inconsistencies in the testimony of the witnesses are resolved by the fact finder. *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011). "We do not revisit such conflicts on appeal 'unless the evidence is such that reasonable [persons], after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion.'" *Id.* (alteration in original) (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 369, *aff'd*, 272 Va. 666 (2006)). "The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017). "In a bench trial, the trial judge's 'major role is the determination of fact . . . .'" *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 11 (2004)).

The Commonwealth presented ample evidence to support the charge of aggravated sexual battery. J.D. testified that once while at her mother's house, Johnson pulled J.D. onto his lap and held her there against her will while his "man's part" grew "bigger and bigger" between her legs. She recognized his "man part" from the pornographic video he had shown her, and she testified at

trial that she had seen his "man part." A rational fact finder could therefore reasonably infer from this testimony that the "man part" Johnson took out of his pants was his penis and that he rubbed his penis on the vaginal and buttocks area of J.D.'s body.

Johnson does not challenge any particular element of the offense. Rather, he contends that since J.D.'s testimony contained inconsistencies and "changing stories," the circuit court erred in accepting her testimony as true. However, the circuit court resolved these conflicts in the Commonwealth's favor. The circuit court acted well within its province as fact-finder by doing so:

> So long as a witness [testifies] as to facts[,] which, if true, are sufficient to maintain their verdict, then the fact that the witness' credit is impeached by contradictory statements affects only the witness' credibility; contradictory statements by a witness go not to competency but to the weight and sufficiency of the testimony. If the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court.

*Smith v. Commonwealth*, 56 Va. App. 711, 718-19 (2010) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)). The circuit court expressly stated that J.D. presented as truthful, that she was trying to recall details that were unpleasant and "are now almost two years old," and that she testified with "remarkable clarity and tremendous consistency." J.D.'s testimony sufficiently established the elements of aggravated sexual battery, and the circuit court acted within its province to find Johnson guilty on that testimony. This Court does not reweigh the circuit court's credibility determination.

### B. *Taking Indecent Liberties with a Minor*

Johnson contends that the Commonwealth failed to prove he acted with lascivious intent as required by the indecent liberties statute. We disagree. "Whether the required intent exists is generally a question for the trier of fact." *Mason v. Commonwealth*, 49 Va. App. 39, 45 (2006) (quoting *Crawley v. Commonwealth*, 25 Va. App. 768, 773 (1997)). "Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a

particular case." *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011) (quoting *Ridley v. Commonwealth*, 219 Va. 834, 836 (1979)). "Intent is a factual determination, and a trial court's decision on the question of intent is accorded great deference on appeal and will not be reversed unless clearly erroneous." *Towler*, 59 Va. App. at 297.

Lascivious intent means "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite." *Dietz v. Commonwealth*, 294 Va. 123, 136 (2017) (quoting *Viney v. Commonwealth*, 269 Va. 296, 299 (2005)). The Commonwealth can establish lascivious intent by proving: "(1) that the defendant was sexually aroused; (2) that the defendant made gestures toward himself or to the child; (3) that the defendant made improper remarks to the child; or (4) that the defendant asked the child to do something wrong." *Viney*, 269 Va. at 300. "[P]roof of any one [of the listed] factor[s] can be sufficient to uphold a conviction . . . ." *Mason*, 49 Va. App. at 45 (first, second, and third alterations in original) (quoting *Campbell v. Commonwealth*, 227 Va. 196, 200 (1984)).

The Commonwealth's evidence sufficiently established that Johnson acted with lascivious intent. On two separate occasions, Johnson pulled J.D.'s shirt up to expose her breasts. During the first incident, J.D. felt scared and ran away. The second incident occurred when Johnson was lying beside her on a bed. On that occasion, Johnson again pulled her shirt up to expose her breasts while simultaneously taking "something out of his pants near his boy parts" and rubbing it on her. On another occasion, Johnson pulled J.D. onto his lap and held here there, while his "man part" grew "bigger and bigger" between her legs, suggestive of his sexual arousal. On a separate occasion, Johnson slapped J.D. near her "butt." The fact that Johnson showed J.D. a pornographic video also reveals the lascivious nature of his actions. A reasonable fact finder could conclude from these facts that Johnson took indecent liberties with J.D. and that he did so with the requisite lascivious intent.

II.  The Commonwealth unambiguously concurred in Johnson's jury trial waiver on the record.

Johnson argues that the circuit court erred by denying his motion to set aside the verdict, contending "the Court and the Commonwealth did not follow the procedure" outlined in Rule 3A:13(b), which requires "on the record concurrence by the Commonwealth" to a defendant's waiver of his right to a jury trial.  Johnson argues that the circuit court did not have jurisdiction to conduct a bench trial in the absence of the Commonwealth's formal concurrence on the record to Johnson's jury waiver.  The record establishes that the Commonwealth concurred in Johnson's consent to be tried without a jury.

Johnson's argument raises a jurisdictional challenge, asserting a question of law that "we review *de novo*."  *Richardson v. Commonwealth*, 67 Va. App. 436, 442 (2017).  This challenge requires us to interpret the Virginia Constitution, Code § 19.2-258, and the Rules of the Virginia Supreme Court.  These are also questions of law that we review de novo.  *Minor v. Commonwealth*, 66 Va. App. 728, 738 (2016).

"[I]n criminal prosecutions . . . [the accused] shall enjoy the right to a speedy and public trial, by an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty."  Va. Const. art. 1, § 8.  If the accused pleads not guilty, "he may, with his consent *and the concurrence of the attorney for the Commonwealth and of the court entered of record*, be tried by a smaller number of jurors, or waive a jury."  *Id.* (emphasis added).  Indeed,

> If an accused who has pleaded not guilty in a circuit court consents to trial without a jury, the court may, with the concurrence of the Commonwealth's attorney, try the case without a jury.  The court may determine before trial that the accused's consent was voluntarily and intelligently given, and his consent and the concurrence of the court and the Commonwealth's attorney *must be entered of record*.

Rule 3A:13(b) (emphasis added).  To that end, Code § 19.2-257 provides,

> Upon a plea of guilty in a felony case, tendered in person by the accused after being advised by counsel, the court shall hear and determine the case without the intervention of a jury; or if the

accused plead not guilty, with his consent after being advised by counsel and the concurrence of the attorney for the Commonwealth and of the court entered *of* record, the court shall hear and determine the case without the intervention of a jury. In such cases the court shall have and exercise all the powers, privileges and duties given to juries by any statute relating to crimes and punishments.

(Emphasis added). Thus, it is clear that a circuit court may conduct a bench trial only if a criminal defendant knowingly and intelligently waives his right to a jury trial and if "such consent, along with the concurrence of the Commonwealth and the circuit court, was 'entered of record.'" *Riddick v. Commonwealth*, 72 Va. App. 132, 140 (2020) (quoting *Cunningham v. Smith*, 205 Va. 202, 207 (1964)). Johnson does not dispute that he knowingly and voluntarily waived his right to a jury trial. Rather, Johnson complains that the circuit court failed to affirmatively enter the Commonwealth's concurrence "*on* the record." (Emphasis added).

Contrary to Johnson's argument, the Commonwealth need not concur "on" the record, but enter its concurrence "of" record. The distinction is meaningful. "On the record," colloquially, refers to oral representations before the circuit court, often memorialized in a transcript. *See Record (3), Black's Law Dictionary* (11th ed. 2019) (referring to its definition for "minutes": "[m]emoranda or notes of a transaction, proceeding, or meeting"). On the other hand, for something to be "of record" is for it to be in the "official report of the proceedings in a case, *including filed papers*, a verbatim transcript of the trial or hearing (if any) and tangible exhibits." *Record (4), Black's Law Dictionary*, *supra* ("Also termed (in some jurisdictions) *clerk's record*."). Thus for something to be "of" record, it should be part of the case file. This is like saying that something is "in" the record. As an example, Code § 17.1-124 shows us what it means to be "of record":

Except as otherwise provided herein, each circuit court clerk shall keep order books or, in lieu thereof, an automated system recording all proceedings, orders and judgments of the court in all matters, all decrees, and decretal orders of such court . . . . In any circuit court, the clerk may, with the approval of the chief judge of the court, by order entered *of* record, divide the order book into two sections, to be known as the civil order book and the criminal order book . . . and all

- 11 -

> proceedings, orders and judgments of the court in all matters at criminal law shall be recorded in the criminal order book . . . .
>
> The clerk shall ensure that these order books have been microfilmed or converted to or created in an electronic format. Such microfilm and microphotographic processes and equipment shall meet state microfilm standards, and such electronic format shall follow state electronic records guidelines, pursuant to § 42.1-82.

(Emphasis added).

Here, the jury call-off form dated December 1, 2021, removed the December 7, 2021 jury trial from the court's docket and rescheduled it for a December 9, 2021 bench trial. The form was signed by the prosecutor assigned to the case, filed in the clerk's office, later included in the record of proceedings for Johnson's case, and served upon counsel of record. The jury call-off form was therefore "in" the, or "of" record.

Additionally, the jury call-off form, together with the absence of any formal objection by the Commonwealth to a bench trial, sufficiently established the Commonwealth's concurrence in the waiver of a jury. "Generally, 'a waiver' is 'a voluntary abandonment of some known legal right, advantage, or privilege . . . .'" *City-to-City Auto Sales, LLC v. Harris*, 78 Va. App. 334, 345 (2023) (quoting *Travis v. Finley*, 36 Va. App. 189, 200 (2001)). The essential elements of waiver are knowledge of the facts basic to the exercise of the right and intent to relinquish that right. *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 622-23 (1998). Thus, waiver of a legal right will be implied "upon clear and unmistakable proof of the intention to waive such right for the essence of waiver is voluntary choice." *Id.* at 623. The record shows that the Commonwealth voluntarily and intentionally abandoned its known legal right to have the matter tried by a jury, and we see no ambiguity in that waiver. This Court, therefore, sees no error in the circuit court's denial of Johnson's motion to set aside the verdict.

III. No abuse of discretion in motion to continue sentencing denial

Johnson argues that the circuit court should have granted his motion to continue the sentencing hearing to give him more time to take a psychosexual evaluation. We disagree. "[W]hether to grant or deny 'a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case.'" *Bailey v. Commonwealth*, 73 Va. App. 250, 259 (2021) (quoting *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). This Court must show "deference to a primary decisionmaker's judgment" and "not reverse merely because [we] would have come to a different result in the first instance." *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013) (quoting *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008)). Accordingly, "we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385 (1997)).

Johnson had two opportunities before the sentencing date to cooperate in the preparation of the court-ordered psychosexual evaluation, and he refused because he believed that his convictions would be overturned. The circuit court weighed the reason for his refusal to cooperate in the preparation of the report against the fact that the victims "need[ed] to testify," and the interference with judicial economy associated with keeping the case on the docket for more "motions to reconsider." On this balance, the circuit court declined to delay the case any further. We cannot say that reasonable jurists could not differ on this point. The circuit court, therefore, did not abuse its discretion in denying Johnson's motion for a continuance.

CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's judgment.

*Affirmed.*